IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MELVIN TODD RELIFORD                                                                    PLAINTIFF

    v.    Civil No. 4:12-cv-04048

CAPTAIN JOHNNY GODBOLT;
SHERIFF JAMES SINGLETON; and
LT. STEPHEN W. GLOVER                                                                   DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed by the Plaintiff, Melvin Todd Reliford, pursuant 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  The Plaintiff is not currently incarcerated.  However, the actions that form the basis of this case occurred while Plaintiff was incarcerated in the Hempstead County Detention Center (HCDC) in 2012.

The case is before me on the consent of the parties.  ECF No. 19.  Defendants have filed a Motion for Summary Judgment.  ECF Nos. 23-25.  Plaintiff has responded to the motion.  ECF No. 28.  The Motion is ready for decision.

### 1.  Background

Plaintiff is subject to seizures.  ECF Nos. 1, 9 & 28.  In April of 2012, while he was incarcerated in the HCDC, he was assigned to an upper bunk and was in a cell by himself.  *Id*.

On April 10th, Plaintiff submitted a request asking for his seizure medication.  *Defendants' Exhibit* A, ECF No. 24-1 (hereinafter *Defts' Ex.*).  Captain Godbolt responded that Plaintiff should have a family member pick up his medicine and bring it to the jail.  *Id.*  If Plaintiff could not do that, he was told he would have to see the nurse to get his medication.  *Id.*

Plaintiff submitted a medical request that day. *Defts' Ex.* B. Plaintiff indicated on the request that he needed his seizure medication and stitches in his right knee. *Id.* The document contains no written response. *Id.*

On April 11th, Plaintiff submitted another medical request. *Defts' Ex.* C. He indicated he had a seizure the prior night and needed his medication. *Id.* He said his seizures were getting worse and worse and that the nurse would not get him any medication. *Id.* The document contains no written response. *Id.*

On April 12th, Plaintiff submitted another medical request. *Defts' Ex.* D. He indicated he was sick and in pain. *Id.* He stated he was having seizures and needed his pain medication. *Id.*

Although not altogether clear, it appears that Plaintiff was seen by medical personnel on April 14th.[1] *Defts' Ex.* D. It was noted that Plaintiff had a large laceration to his right knee. *Id.* Sterile strips were applied and daily wound care was ordered. *Id.* Plaintiff was also to be sent to the Health Department for an update of his tuberculosis immunizations. *Id.*

On April 13th, Plaintiff submitted a medical request stating that his knee was infected, swollen, and steadily bleeding. *Defts' Ex.* E. He also stated he was having more seizures. *Id.*

On April 18th,[2] Plaintiff had a seizure and fell out of his bunk. ECF Nos. 1, 9 & 28. He asserts he was unconscious for a period of time. *Id.* He maintains that no guard checked on him. *Id.* He believes it would be difficult for another sleeping inmate to "hear" him having a seizure. *Id.*

On April 18th, Plaintiff also submitted a medical request. *Defts' Ex.* F. He stated he was

---

[1] This information is contained on the bottom portion of the medical request dated April 12th.

[2] Plaintiff in his response states he failed to properly separate incidents that occurred on two separate days. ECF No. 28. He indicates he was not taken to the hospital following the April 18th incident. However, following the April 21st incident, he was taken to the hospital. *Id.*

having "too many seizures and thinking about killing myself." *Id.*

Plaintiff was seen that day and diagnosed with seizures, a wound to the right knee, and personality disorder. *Id.* It was noted the right knee was clean with no sign of infection. *Id.* Daily dressing changes were order. *Id.* A mental health referral was also requested. *Id.*

That same day, Plaintiff submitted a request form stating that after everyone was locked down Plaintiff woke up on the floor because he had a bad seizure. *Defts' Ex.* G. Plaintiff also stated that no guard had checked on him. *Id.* Godbolt responded asking whether Plaintiff was in a "room" by himself or if he had a roommate. *Id.* Godbolt also stated that he knew that the officers make their rounds every hour. *Id.*

On April 19th, Plaintiff submitted a medical request. *Defts' Ex.* H. He said he needed a tetanus shot so he would not get an infection in his knee. *Id.* In response, he was to go to the Health Department for a tetanus shot, be placed in a cell with someone else due to seizure activity, and was allowed to have crackers with his medication so it would not bother his stomach. *Id.*

On April 21st, sometime during the night, Plaintiff had a seizure and fell to the floor. ECF Nos. 1, 9 & 28. The pod was locked down. *Id.* Plaintiff was unconscious for an unknown period of time; he believes it was most of the night. *Id.* Plaintiff suffered an injury to his head and woke up in a puddle of his own blood. *Id.* While guards are supposed to do hourly checks, Plaintiff states no guard checked on him or helped him until early the following morning. *Id.*

At approximately 6:38 a.m., Officer Zumwal and Sergeant Dunham were dispatched to C-pod to investigate a complaint that an inmate had busted his head open and was bleeding. *Defts' Ex.* I. Plaintiff was found "acting in an incoherent manner" and running into tables and walls. *Id.*; *Defts' Ex.* J. He was not cooperating with the officers attempts to get him down to the nurse's

station. *Id.* With the assistance of Inmate Ted Hamilton, they were able to get the Plaintiff to the nurse's station. *Id.* He was cleaned up by Nurse Lori and she determined he needed to go to the hospital for stitches over his left eye. *Id.* The pod and Plaintiff's cell were cleaned of blood. *Id.*

Prior to him being transported to the hospital, Plaintiff was told to shower and get in clean clothes because he had blood all over him. ECF No. 1, 9 & 28. At the emergency room, Plaintiff received three stitches for a laceration above his left eye and the jailers were told that Plaintiff should be on the bottom bunk. *Id. See also Defts' Ex.* K.

When he returned to the jail, Plaintiff was assigned to the bottom bunk. ECF No. 28 at pg. 4. Additionally, he was no longer locked down for twenty-three hours of the day. *Id.* His cell door was unlocked all day everyday. *Id.*

Plaintiff maintains Defendants have an unconstitutional custom of not having the jailers do security rounds in a timely manner. ECF No. 9. Further, he asserts that Defendants did not maintain a secure and safe environment for inmates with health issues. *Id.*

With respect to Captain Johnny Godbolt, Plaintiff maintains that as jail administrator Godbolt allowed him to remain assigned to a top rack despite knowing he had regular seizures. ECF No. 9. In response, Godbolt states that bunk assignments are done by the booking officer. *Defts' Ex.* L at ¶ 3. He also contends that he did not even know the Plaintiff's housing arrangements. *Id.* at ¶ 4. Even if an inmate is housed by himself, Godbolt states "he would be surrounded by inmates in other cells who could hear what is going on in his cell and report this to an officer." *Id.* at ¶ 5. Godbolt also notes there is an intercom at the front of the pod that can be pushed to obtain assistance. *Id.* at ¶ 6. Godbolt does not indicate how inmates on lock down in their cells can reach this button. *Id.* Godbolt also says that "security rounds" are done once every hour during the night shift to check on

inmates. *Id.* at ¶ 7. Godbolt does not explain how the "security rounds" are conducted. *Id.*

With respect to Sheriff Singleton, Plaintiff states he "was not stopping or trying to correct the things that Cpt. Johnny Godbolt was doing." *Id.* With respect to Lieutenant Steven Glover, Plaintiff states he would not see the Plaintiff or get him medical treatment for the injuries he suffered as a result of seizures. *Id.*

### 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### 3.  Arguments of the Parties

Defendants deny that they engaged in any type of conduct that has resulted in the Plaintiff's constitutional rights being violated.  They move for summary judgment on the following grounds: (1) Plaintiff cannot show that a policy or custom of Hempstead County was the moving force behind any alleged constitutional violations; (2) there is no basis for a claim against Singleton as there is no allegation that Plaintiff ever had any conversations or communication with Singleton regarding his bunk assignment, cell assignment, medical care, or any other issue; (3) there is no basis for the claim that Glover denied the Plaintiff medical care for injuries resulting from a seizure; and (4) there is no basis for the claim that Godbolt allowed Plaintiff to remain assigned to a top bunk after knowing the Plaintiff was subject to seizures.

In opposition, Plaintiff argues that Hempstead County had an unconstitutionally policy or custom of not providing safe environments for inmates with health issues.  He asserts that the jailers do not make hourly rounds in a timely manner.  He also asserts that bunk assignments are given out without consideration of the inmate's health issues.  With respect to Singleton, Plaintiff asserts he did nothing to stop or try to correct the manner in which Plaintiff was being housed and his lack of medical treatment.  With respect to Godbolt, Plaintiff argues that he allowed the Plaintiff to remain in a top bunk despite his knowledge that Plaintiff had seizures.  Finally, with respect to Glover, Plaintiff maintains he would not see the Plaintiff and did nothing to get the Plaintiff medical treatment.

### 4.  Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

In this circuit, the deliberate indifference standard of the Eighth Amendment is applied to all conditions of confinement claims whether the claims are brought by a pretrial detainee or a convicted prisoner. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, utilities, safety and medical care.

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

### (A). Unsafe Environment Claim

The conditions alleged to exist fall far short of depriving the Plaintiff of the minimal civilized measure of life's necessities. However, even assuming for the purposes of this motion, that Plaintiff has shown a genuine issue of material fact as to whether Defendants' conduct objectively rises to the level of a constitutional violation by depriving the Plaintiff of the minimal civilized measure of life's necessities, the claim fails because there is no genuine issue of fact as to whether Defendants' conduct reflects a subjective state of mind evidencing deliberate indifference to the Plaintiff's safety. There is no evidence that Singleton was even aware of the Plaintiff's existence let alone his medical condition and the problems Plaintiff was experiencing as a result of being assigned to a top bunk in a cell by himself. Nor is there any evidence that Singleton knew that the jailers were requiring Plaintiff to sleep in his assigned bunk even though there was no other inmate assigned to the cell.

Similarly, Godbolt was unaware of how the Plaintiff was being housed as evidenced by his

response to a request made by the Plaintiff. *Defts' Ex.* G. There is no evidence of further communications between Godbolt and the Plaintiff regarding his housing and bunk assignments. If anything, Godbolt was negligent in failing to follow-up. Negligence, however, cannot form the basis of a § 1983 claim. *See e.g., Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499 (8th Cir. 2008)(deliberate indifference, which is akin to criminal negligence, requires more than negligent misconduct).

The same applies to Glover. The summary judgment record does not indicate that Glover responded to any of Plaintiff's medical requests or his request forms. There is nothing in the record to show that Glover was aware of the problems Plaintiff was having with respect to his housing or bunk assignments. Without the requisite knowledge, deliberate indifference cannot be found to exist.

To the extent, Plaintiff is asserting a supervisory liability claim against the Defendants, that claim also fails. A claim of deprivation of a constitutional right cannot be based on a respondent superior theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The general responsibility . . . for supervising the operation of a [facility] is not sufficient to establish personal liability." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "[A] bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of inadequate training or supervision of subordinates, is [not] sufficient to state a [§ 1983] claim." *Id.*; *see also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

In this case, Plaintiff makes a blanket statement that Defendants did nothing to correct his housing situation. However, as noted above, there is nothing in the record to show that the

Defendants were even aware of Plaintiff's housing situation and the danger he faced being assigned to a top bunk in a cell by himself.

### (B). Denial of Adequate Medical Care

The same Eighth Amendment deliberate indifference standard applies to denial of medical care claims; Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

Plaintiff's claim in this case centers on the fact he was not prescribed seizure medication and did not receive adequate medical care after he had seizures.  There is nothing in the summary judgment record to suggest any of the named Defendants were involved, in any way, in determining what medical care the Plaintiff needed.  In fact, the only medical requests submitted as exhibits that are responded to bear the signature of a medical care provider whose name appears to be Joan McLea. Another medical care provider, Nurse Lori, made the decision to send the Plaintiff to the hospital following his fall on April 21st.

Liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action. *See e.g., Ripson v. Alles*, 21 F.3d 805, 808-09 (8th Cir. 1994).  The named Defendants were not personally involved in responding to any of Plaintiff's medical requests; nor is there any indication the named Defendants were consulted about the requests or even knew about the requests.  *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the

defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). General responsibility for supervising the jail is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). In short, there is simply no basis on which the named Defendants could be held liable.

### (C). Official Capacity Claims

Finally, with respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Hempstead County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.,* 709 F.3d 1201, 1214 (8th Cir. 2013)To establish Hempstead County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir.2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the

>policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir.2007).

*Id*. at 817-18.

Plaintiff maintains the Defendants should be liable for his problems because they are "over the officers who work for the Hempstead County jail." ECF No. 28 at pg. 7. Plaintiff also maintains Hempstead County did nothing to ensure jail rounds were made on a timely basis, did not maintain a safe environment for inmates with health issues, and failed to provide him with seizure medication.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to do so.

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

>To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
>1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Here, Plaintiff has shown nothing except alleged unconstitutional conduct with respect to his

housing and bunk assignment in April of 2012. A single deviation is insufficient to establish the a custom. *Id.* at 829. Multiple incidents occurring over a course of time are needed to establish a custom. *Id.* Plaintiff's allegations in this case do not suggest the existence of any unconstitutional policy or custom of Hemptead County.

### 5. Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment (Docs. 25-27) will be **GRANTED** and the case **DISMISSED** with prejudice. A separate judgment will be entered.

**DATED** this 27th **day of August 2014**.

>  /s/ Barry A. Bryant
>  HON. BARRY A. BRYANT
>  UNITED STATES MAGISTRATE JUDGE